### DAIR v. UNITED STATES.

A bond, perfect upon its face, apparently duly executed by all whose names appear thereto, purporting to be signed and delivered, and actually delivered without a stipulation, cannot be avoided by the sureties upon the ground that they signed it on a condition that it should not be delivered unless it was executed by other persons who did not execute it—where it appears that the obligee had no notice of such condition, and there was nothing to put him upon inquiry as to the manner of its execution, and that he had been induced upon the faith of such bond to act to his own prejudice.

ERROR to the Circuit Court for the District of Indiana.

The United States brought an action of debt on a distiller's bond, executed by Jonathan Dair and William Sauks as principals, and by James Dair and William Davison as sureties. There was no dispute as to the right to recover against the principals, but the sureties, who pleaded separately, denied their liability upon the bond, and upon the issue thus raised by them, there was the following special finding by the court:

"That the said James Dair and William Davison signed the said writing obligatory upon the day of its date, as sureties, at the instance of Jonathan Dair, one of the principals, but that it was signed by them upon the condition that said writing obligatory was not to be delivered to the plaintiff until it should be executed by one Joseph Cloud as co-surety; that the said writing obligatory, upon its signing by them upon the condition

aforesaid, was placed in the hands of the said principal, Jonathan Dair, who afterwards, without the performance of that condition, and without the consent of the said James Dair and William Davison, delivered the same to the plaintiff. And, that when the bond was so delivered, *it was in all respects regular upon its face, and that the plaintiff had no notice of the condition.*"

As a conclusion of law upon these facts, judgment was rendered in favor of the United States, against all the parties to the bond, for the amount which it was conceded the principals owed the government. This writ of error was prosecuted by them to reverse that decision.

*Messrs. J. E. McDonald and J. M. Butler, for the plaintiffs in error:*

This court, in *Pawling et al.* v. *The United States*,* held that parol evidence might be introduced to establish the fact that a bond which on its face purported to have been delivered, absolutely, had been delivered in violation of the conditions upon which it had been signed, by some of the parties, and that if such defence should be made out, it was sufficient to defeat the suit on this bond as to those who had signed it thus conditionally.

The same doctrine is laid down in a leading case in New York, *People* v. *Bostwick et al.*,† where most of the leading cases on both sides of the question are cited, and the questions are treated upon the legal principles involved, as well as in the light of adjudicated cases, and such conclusions are reached as make it impossible to disregard them without a departure from well-established propositions of law relating to the execution of instruments like the one under consideration.

But *Pawling et al.* v. *The United States* binds this court as an authority.

It is an axiom of the law that a bond speaks from the time of its delivery, and it makes no difference how perfect it may be in form, it is, unless it has actually been delivered,

---

* 4 Cranch, 219.                    † 32 New York, 445.

no bond.  To constitute a delivery it must pass out of the hands of the obligors with their consent, and must be received by the obligee or his agent in that behalf, for the purpose for which it was intended.

*Mr. G. H. Williams, Attorney-General, and Mr. C. H. Hill, Assistant Attorney-General, contra,* relied on *State* v. *Peck,** a case, they said, directly in point for the government; the principle involved being, after all, they argued, only that plainly just one, long ago declared by Lord Holt,† when he said in a case somewhat similar in principle:

"Seeing somebody must be a loser by this deceit, it is more reason that he that employs and puts a trust and confidence in the deceiver should be a loser than a stranger."

Mr. Justice DAVIS delivered the opinion of the court.

It is important that the question involved in this case should be settled, on account of the various interests connected with the administration of governmental affairs, requiring official bonds to be taken, which, as a general thing, are rarely executed in the presence of both parties.  It is easy to see, if the obligors are at liberty, when litigation arises and loss is likely to fall upon them, to set up a condition, unknown to the person whose duty it was to take the bond, and which is unjust in its result, that the difficulties of procuring satisfactory indemnity from those who are required by law to give it, will be greatly increased.  Especially is that so, since parties to the action are permitted to testify.

In *Green* v. *The United States*,‡ the cause of action and defence were the same as in this suit, but as the judgment was reversed on another ground, and the merits of the defence were not discussed, they were not decided.  As the case

---

* 53 Maine, 284.

† Hern *v.* Nichols, 1 Salkeld, 289; and see in recent times Pickard *v.* Sears, 6 Adolphus & Ellis, 469, per Denman, C. J.

‡ 9 Wallace, 658.

was sent back for a new trial, the court thought proper to call the attention of the court below and of counsel to the subject, and took occasion to say that it had grave doubts whether the facts set up were a valid defence to the action. Subsequent reflection has confirmed the views then entertained, and we are now prepared to say that the position of the defendants cannot be maintained. The ancient rules of the common law in relation to estoppels in pais have been relaxed, and the tendency of modern decisions is to take a broader view of the purpose to be accomplished by them, and they are now applied so as to reach the case of a party, whose conduct is purposely fraudulent or will effect an unjust result.

It must be conceded that courts of justice, if in their power to do so, should not allow a party who, by act or admission, has induced another with whom he was contracting to pursue a line of conduct injurious to his interests, to deny the act or retract the admission in case of apprehended loss. Sound policy requires that the person who proceeds on the faith of an act or admission of this character should be protected by estopping the party who has brought about this state of things from alleging anything in opposition to the natural consequences of his own course of action. It is, accordingly, established doctrine that whenever an act is done or statement made by a party, which cannot be contradicted without fraud on his part and injury to others, whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what otherwise would be mere matter of evidence.*

Why should not this principle of estoppel, on every reason of justice and good faith, be applied to the covenant on which this action is founded. The bond was in all respects regular, executed according to prescribed forms, and accepted by the officer whose duty it was to take it, as a completed contract. There was nothing on the face of the paper or in the transaction itself to put the officer on inquiry, or

---

* 2 Smith's Leading Cases, 7th edition, note to the Duchess of Kingston's Case, 424.

to raise even a suspicon in his mind that a condition was annexed to the delivery of the instrument. The transaction was one of ordinary occurrence in the administration of the revenue laws, and if the officer was satisfied of the sufficiency of the indemnity, there being no circumstances to create distrust that the principal obligors who tendered the bond were not upright men, there was nothing left for him to do but to take it and issue the license. This was done, and the government will be greatly prejudiced if the sureties who were relied on to perform the conditions in case of the failure of the principals, can defeat a recovery on the ground that they did not intend to be bound unless another shared the responsibility, and so told the principal obligors who solicited their signatures. But they did not inform the revenue officer of this condition, and their omission to do so then estops them from setting it up now. The silence which they imposed upon themselves at the time makes their present conduct culpable, for it is not to be doubted that the officer in charge of this business would have acted differently if the information which the principals received had been communicated to him. In the execution of the bond the sureties declared to all persons interested to know that they were parties to the covenant and bound by it, and in the belief that this was so they were accepted and the license granted. They cannot, therefore, contravene the statement thus made and relied on without a fraud on their part and injury to another, and where these things concur the estoppel is imposed by law. As they confided in Dair it is more consonant with reason that they should suffer for his misconduct than the government, who was not placed in a position of trust with regard to him.

The case of *Paulding et al.* v. *The United States*, has been cited as an authority against the position taken in this case; but it is not so, because the additional securities to be procured in that case were named on the face of the bond, and this fact is stated in the plea. If the name of Joseph Cloud appeared as a co-surety on the face of this bond, the estoppel would not apply, for the reason that the incomplete-

ness of the instrument would have been brought to the notice of the agent of the government, who would have been put on inquiry to ascertain why Cloud did not execute it, and the pursuit of this inquiry would have disclosed to him the exact condition of things."

In any case, if the bond is so written that it appears that several were expected to sign it, the obligee takes it with notice that the obligors who do sign it can set up in defence the want of execution by the others, if they agreed to become bound, only on condition that the other co-sureties joined in the execution.

We are aware that there is a conflict of opinion in the courts of this country upon the point decided in this case, but we think we are sustained by the weight of authority. At any rate, it is clear on principle that the doctrine of estoppel in pais should be applied to this defence.

It would serve no useful purpose to review the authorities. This work has been performed in several well-considered cases in Maine, Indiana, and Kentucky, and although these courts do not rest their decisions on the same ground, yet they all agree that the facts pleaded in this suit do not constitute a bar to the action.*

JUDGMENT AFFIRMED.

---

* State v. Peck, 53 Maine, 284; State v. Pepper, 31 Indiana, 76; Millett v. Parker, 2 Metcalfe (Ky.), 608.