## CARUSI *v.* SAVARY..

DEEDS ; DELIVERY OF ; EQUITY ; FRAUD ; ESTOPPEL.

1. Possession of a deed by a person who claims under it is *prima facie* evidence of the delivery of the instrument, and throws upon the maker the burden of proving that it was never delivered.
2. As between the grantor and grantee in a deed the question of delivery is one to be determined by a fair preponderance of evidence; but where rights of third persons have intervened, the proof of non-delivery should be clear beyond a reasonable doubt; and in many cases the grantor will be estopped from denying the delivery.
3. Where one of two innocent persons must suffer a loss occasioned by the wrongful act of a third person, that one must bear the loss who by his negligence or inadvertence has placed it in the power of such third person to perpetrate the wrong.
4. Where an unrecorded deed to become void if a certain contingency should not happen within a given time, was deposited in a safe deposit box, to which both grantor and grantee had access, and the grantee before the expiration of the time limited for the happening of the contingency abstracted the deed from the box and in fraud of the grantor used the deed to procure a loan secured by deed of trust upon the property, it was *held* in a suit by the grantor to cancel the deed and deed of trust that the grantor having placed it in the power of the grantee to perpetrate the fraud, was estopped to deny the delivery of the deed and its validity as far as it was required to support the loan.

No. 343. Submitted April 9, 1895. Decided May 20, 1895.

HEARING on an appeal by the defendant from a decree vacating and annulling two deeds of real estate. *Reversed.*

The COURT in its opinion stated the case as follows:

The appellee, John Savary, was the owner of two adjacent lots of ground in square No. 71, in the city of Washington, with dwelling houses thereon, in one of which he resided, and the other he rented to Thomas H. Williams, one of the defendants in this case, although he does not appear in the appeal. On September 15, 1892, Savary and Williams entered into an agreement which was reduced to writing, whereby it was agreed that Savary would sell to Williams the property occupied by the latter, and that Williams in consideration of this transfer, would assign to Savary an interest, amounting to $7,500, held by him (Williams) in a claim of one Aaron Van Camp against the United States, in which there had been findings by the United States Court of Claims in favor of Van Camp, but which was awaiting the action of Congress for an appropriation. The agreement between the parties, it is understood, provided for the immediate execution of a deed of conveyance by Savary and of a formal assignment of his interest in the Van Camp claim by Williams, and these two papers were accordingly executed by the two parties respectively on the same day (September 15, 1892). The agreement provided also, that if the proceeds of the claim should not be collected before September 15, 1893—that is, within one year thereafter— the transaction should be rescinded, and the sale and the assignment should both be null and void; and in that event Williams should pay to Savary the sum of $500 as rent for the use and occupation of the property for the year.

The agreement, the deed and the assignment were then placed in an envelope, which was thereupon sealed and indorsed with the superscription " Exhibit A ;" and Savary and Williams, the two parties to the arrangement, went with it to the office of the Washington Loan and Trust Company, rented from that company in their joint name a safe or box

in its vaults, in which they deposited the envelope with its contents, and for which each one of the two received a duplicate key.    The two signed a receipt on the books of the company, had some understanding with the assistant custodian of the vault who was the officer of the company with whom they dealt on this occasion, and went their way.    The contents of the receipt are in controversy, as is to some extent the terms of the understanding which they had with the officer of the company.    The receipt, as it appears now from the books of the company, is partly printed, partly stamped and partly written, and is as follows :

" WASHINGTON, D. C., Sept. 15, 1892.

" Received of the Washington Loan and Trust Company *2* keys to safe No. *610*, and a receipt upon which is printed the contract under which said safe is leased, and to the terms of which I agree.

" It is understood and agreed that *either* one of the lessees, who are considered to be joint lessees, shall have, at all times, free access to safe No. *323* leased by them.

" It is agreed by the undersigned that the sealed envelope marked Exhibit " A " shall not be taken from the Box except in the presence of both parties hereto.

(Signed),       " JOHN SAVARY,

(Signed),       " T. H. WILLIAMS."

The first is the printed part, with the exception of the figures 2 and 610, which are filled in in writing.    The portion underneath the printing, on the left-hand side, was impressed by a stamp, stated to be usually used on such occasions, except the word *either* and the number *323*, which are both in writing, blanks having been left for them.    The portion on the right-hand side immediately over the signatures of the parties, is in the handwriting of Mr. Allen E. Hill, who was the officer of the company with whom the parties had their arrangement.

The year limited for the continuance of their contract passed without the payment of the Van Camp claim ; and the parties again came together on September 14, 1893, and renewed their agreement, apparently with some slight modification, to continue until March 4, 1895.    A supple-

mental contract was then drawn up, which appears in full in the record, and of which three copies were made, one for each of the parties and one to be deposited in the box in the vault of the loan and trust company. The papers previously deposited in that box had been withdrawn for the purpose of making this supplemental agreement; but on the next day, September 15, 1893, the two parties again appeared at the office of the company, renewed their subscription for another year, placed the papers, including the original agreement, the deed of conveyance, the assignment of the claim, and the supplemental agreement, in an envelope, sealed the envelope, marked it as before " Exhibit A," and returned it to the box.

On the same day, September 15, 1893, Mr. Tenny Ross, an officer of the loan and trust company, who was the custodian of the vault, and to whom Mr. Hill, the assistant custodian, was subordinate, having occasion to examine the receipt of Savary and Williams on his books, which has been heretofore set forth, and deeming apparently that the stamped portion of the receipt was inconsistent with the written portion, drew cancellation marks through the former and wrote across it the words and figures, " Cancelled 9–15, T. Ross," meaning thereby, " Cancelled on September 15, 1893." This was done without consultation with Mr. Hill, or any other officer of the company, or with either of the parties.

On October 5, 1893, Williams came alone to the office of the company, procured, through Mr. Hill, who was in attendance, access to the box, carried it to one of the private rooms out of the presence of any officer of the company, abstracted from it the envelope marked " Exhibit A" with its contents, substituted in its place an envelope filled with worthless paper and returned the box to the vault.

Thereupon he procured from the defendant, John Burton, a loan of thirty-five hundred dollars ($3,500), to be secured by deed of trust upon the property. The District Title Insurance Company of the District of Columbia was em-

ployed to examine the title, and the deed from Savary to Williams was by the latter placed in its possesion for the purpose and to be placed upon record in connection with the proposed deed of trust. The title, except as to a small part of the property deemed to be of no importance, was found to be good on the record. The deed of trust was thereupon executed by Williams, with the defendants, Eugene Carusi, Esq., president of the title company, and William T. Davis, as trustees ; the money ($3,500), was paid by Burton, and the deed from Savary to Williams and the deed of trust from Williams to Carusi and Davis to secure Burton were delivered for record.

Receiving intimation of the transaction from notices of the transfer in the newspapers, the appellee, Savary, on October 27, 1893, went to the office of the loan and trust company, procured access to the box, and discovered the abstraction of the envelope designated as " Exhibit A," with its contents. A stormy scene followed, which need not be detailed. As soon as possible thereafter, on November 3, 1893, Savary filed his bill in equity in the present suit, in which he seeks the cancellation, both of the deed to Williams and of the deed of trust given by the latter, and to enjoin the defendants from setting up title in the premises.

The defendant Williams had disappeared ; he failed to answer, and a decree *pro confesso* was taken against him. The defendants Carusi, Davis and Burton answered ; and the substance of their answer is that they had no knowledge of any fraud or illegality on the part of Williams, and that they were *bona fide* purchasers for value without notice.

Testimony was taken, most of it on behalf of the complainant Savary, from which the facts here stated were developed. One peculiar feature of the testimony is that the complainant seeks to contradict one of his own witnesses, Hill, the officer of the loan and trust company with whom he dealt. Hill testified that the stamped portion of the agreement on the books of the company signed by Savary and Williams was placed there before they signed

the receipt. Savary testified that, according to his recollection, it was not there at that time, and that he had never seen it until the books were produced in evidence in this case. The juxtaposition of the two parts of the agreement, in the limitation of the written part to the space which it occupies, shows conclusively that Mr. Hill is right and Mr. Savary mistaken, and that the stamped portion was impressed before the other portion was written. But this, after all, does not seem to be of controlling importance in the case.

Upon the hearing, the court below rendered a decree in favor of the complainant, and directed that the two deeds complained of should be vacated and annulled. From this decree the defendants Carusi, Davis and Burton have appealed.

*Mr. Charles A. Keigwin, Mr. William J. Miller, Mr. Benj. F. Gilkerson* and *Mr. Wm. F. Mattingly*, for the appellants :

1. The decree is based upon the erroneous assumption by the court below that the complainant, Savary, committed his deed to the custody of the Washington Loan and Trust Company.

It will be observed that there were two agreements noted on the register. The first is an agreement between the company on one side and the lessees on the other. It is an offer held out by the company and accepted by the depositors. The latter agree that the company may allow them free access to the box ; that its custody of the box shall extend only to keeping other people from their valuables, and that it shall undertake no duty of surveillance over their conduct toward each other. The other agreement—that written in manuscript and signed by Savary and Williams—is a contract entirely different in respect to its parties and its subject-matter. It purports on its face to be made " by the undersigned," and it cannot be construed to bind other parties than those signing it. It describes the signers as " both parties," an expression necessarily excluding a third con-

tracting party. It makes no allusion to the loan and trust company as a party, and does not suggest that the supervision or authority of that company is invoked to enforce its stipulations.

Viewed in this light, their is no inconsistency between the two agreements. Considering the manuscript memorandum as the contract of the company, and making the company a party to the supplementary contract and a guarantor of its terms, there is a necessary repugnancy between the two.

The cancellation of the stamped notice which Mr. Ross assumed to perform, cannot in the least affect the nature of the contract or the relations of the parties. The cancellation occurred one year after the agreements were executed ; it was done by Mr. Ross, who was not present when the agreements were made ; it was done in the absence of the parties and without consultation with Savary or Williams or Hill, or any officer of the company or anybody else who might be supposed to have an interest in the canceled agreement or to have some knowledge of the purposes of the parties. The act of Mr. Ross is therefore to be regarded simply as an unauthorized alteration of a written instrument by one without interest in or information about it, and the rights of the parties are to be measured by the language of the agreements as they were originally signed.

2. The abstraction by Williams of the deed running in his name was not larceny. The conversion by a bailee of goods entrusted to his care is not larceny. *Robinson* v. *State*, 78 Am. Dec. 487 ; *Wright* v. *Lindsay*, 20 Ala. 428. Written instruments are not the subject of larceny. *People* v. *Griffin*, 38 How. Pr. 475. Especially where they are not valid. *Wilson* v. *State*, 1 Porter (Ala.) 118. So one does not commit larceny in fraudulently appropriating a receipt in his favor. *People* v. *Loomis*, 4 Denio, 380 ; *People* v. *Bradley*, 4 Parker, C. R. 245 ; *Converse* v. *Cook*, 31 Hun. 417. So held specifically of the fraudulent conversion of a deed by the person named therein as grantee. *People* v. *Mackinley*, 9 Cal. 250. Williams' abstraction of the deed, how-

ever reprehensible in morals, cannot be held larceny. It was a gross breach of trust and a violation of the confidence reposed in him by the appellee.

3. The appellee is estopped by his negligence from asserting the fact of non-delivery of his deed against the appellants. It is conceded that the appellants are free of any fraud in the matter, and that Mr. Burton actually and in good faith advanced $3,500 upon the faith of the appellee's deed without any knowledge of the facts relied upon in the bill. The appellants in their answer aver affirmatively all the facts requisite to make the plea of innocent purchasers for value, and these averments are uncontradicted.

The only fact relied upon by the complainant to charge the defendants with notice of the fraud of Williams was the circumstance that the deed was a little more than a year old and unrecorded when he produced it as the basis for negotiating the loan. This is suggested as a suspicious circumstance sufficient to charge the appellants with the duty of inquiry. Under the statute law in this District there is no requirement that a deed shall be recorded within any specific period. Deeds are effective *inter partes* from delivery and against creditors and subsequent purchasers from date of recordation. Act 29 April, 1879, 20 Stat. at L. 39; *Hitz* v. *Bank*, 111 U. S. 722, 728. In this state of the law there is nothing surprising or uncommon in withholding a deed from record for a year or more, and it appears affirmatively, as a matter fact, that delay in such matters is more usual than promptness.

The appellant advanced his money upon the faith of the appellee's deed, which was fair and perfect on its face and was produced by the grantee apparently entitled to its possession. He exercised all due and customary precaution to make sure of the title. He availed himself of the skill and experience of a reputable title company, and the consensus of opinion among all concerned in making the loan indicate that the transaction was effected in accordance with the principles recognized among business men as safe and

correct. Not the slightest imputation of negligence can be made against the appellant, nor can it be suggested that he might have protected himself by any additional precautions known to the commercial world.

The appellee, on the other hand; came into the court below praying relief against the consequences of his own negligence and seeking to make the appellant Burton bear a loss which he himself had made possible. In any aspect of the case the abstraction of the deed was due to the grantor's failure to take ordinary precaution. Even conceding that he looked to the bank for the custody of the instrument, the loss is due to the negligence of an agent chosen by himself, and upon the most favorable view the error of the bank was due to Savary's failure to negotiate with the proper officers or to make a sufficiently definite and intelligible arrangement with the custodian.

The sole ground upon which Savary seeks to cast the consequences of his own negligence upon Burton is the assertion that the deed was never delivered to Williams, and was, therefore, a void instrument. Reliance is had upon the ancient rule of the common law that non-delivery will avoid a deed even in the hands of an innocent purchaser.

The necessary result of the arrangement was to put the deed in the power of Williams, and the grantor is presumed to contemplate the natural consequence of his acts. If he abdicates the sole custody of his deed and shares the possession with the grantee he cannot say that he did not intend the grantee to acquire at least a share in the control of the document. An intentional delivery does not involve more than this voluntary surrender of sole possession. It does not require a further purpose to make the deed immediately effective. A delivery made with intent that the deed shall operate from a future date or shall operate only upon the performance of a condition is valid to effect a transfer in favor of purchasers from the grantee. Between the original parties the terms and conditions of the delivery

may be enforced ; but when once the grantee, with or without performance of the condition, has drawn third parties into the transaction the delivery is absolute without reference to the original intent of the grantor. The rule on this point is as old as the year books. 9 Coke, 136; Coke Litt., 36*a*; Cro. Eliz., 520 ; Shepherd, Touchstone, 59 ; see also *McCann* v. *Atherton,* 106 Ill. 32, 35, citing *Arnold* v. *Patrick,* 6 Paige, 310 ; *Fairbanks* v. *Metcalf,* 8 Mass. 230.

The principle underlying the rule, that delivery to the grantee is a waiver of any concomitant condition or stipulation, is identical with that which lies at the base of the modern doctrine of estoppel. An illustration of this expansion of the doctrine of estoppel is the law touching bonds and other obligations entrusted to co-obligors or other persons and which have been utilized contrary to the terms of the trust. It is now well settled that if one signs a bond containing blanks, though he may stipulate that the blanks shall be filled in only for certain sums, or that the bond shall not be valid unless signed by other persons, he is nevertheless bound if the peson entrusted with the bond pass it over to the obligee without complying with the terms of the stipulation. In the advancement of this wholesome and equitable doctrine numerous precedents have been overruled and one dogma after another of the ancient law has been discarded, particularly those which related to the technicalities of delivery and to the alteration of sealed instruments. *Dair* v. *United States,* 16 Wall. 1 ; *Butler* v. *United States,* 21 Wall. 272 ; *Chicago* v. *Gage,* 93 Ill. 593 ; *Inhabitants* v. *Huntress,* 53 Me. 89 ; *McCormick* v. *Bay City,* 23 Mich. 457 ; *Smith* v. *Peoria Co.,* 59 Ill. 414 ; *State* v. *Pepper,* 31 Ind. 76 ; *State* v. *Peck,* 53 Me. 284 ; *Millet* v. *Parker,* 2 Metc. (Ky.) 608 ; *Webb* v. *Baird,* 27 Ind. 368 ; *Brown* v. *Probate Judge,* 42 Mich. 501 ; *Ins. Co.* v. *Wilcox,* 8 Bissell, 197 ; *Ordinary* v. *Thatcher,* 12 Vroom, 403.

In the case of commercial paper no rule is better settled than that any alteration will make it void. *Master* v. *Miller,* 4 Term Rep. 320 ; Daniel, Neg. Inst., sec. 1373 *et seq.*

But the maker of a check may by his negligence in filling it up estop himself to prove a fraudulent alteration. *Young* v. *Grote*, 4 Bingham, 253 ; Daniel, Neg. Inst., sec. 1405 *et seq.* A negotiable instrument left in escrow binds the maker if delivered by the depositary in violation of instructions and it falls into the hands of a *bona fide* purchaser. Parsons, Bills and Notes, 109 ; *Putman* v. *Sullivan*, 4 Mass. 45 ; *Burson* v. *Huntington*, 21 Mich. 433. That the present tendency is to apply the same rule to sealed instruments, see Daniel, Neg. Inst., sec. 856.

The modern extension of this doctrine of estoppel is illustrated by cases of violated escrow. The court below stated the law to be that the depositary of an escrow is a trustee, and that parties taking from him in violation of the terms of the trust are generally protected. The rule, on the contrary, was that the depositary is a trustee or agent with limited authority, and that those taking from him are bound to know the extent of his authority. *Everts* v. *Agnes*, 4 Wisc. 356 ; *Smith* v. *Royalton Bank*, 32 Vt. 341 ; *Berry* v. *Anderson*, 22 Ind. 36 ; *Peter* v. *Wright*, 6 Ind. 183.

Doubtless the same rule would still apply to a case where a deed is taken from a depositary by one knowing the fiduciary character of his possession ; but where an instrument is taken from escrow contrary to the conditions of the deposit, but without actual indictable crime, and innocent third parties lay out money upon the faith of the instrument, the grantor is estopped to set up the fact of non-delivery, but must bear the loss occasioned by the negligence, error, or infidelity of the agent selected by himself. This is the holding of what are believed to be the latest cases upon this point. *Bailey* v. *Crim*, 9 Bissell, 95 ; *Pratt* v. *Holman*, 16 Vt. 536 ; *Blight* v. *Schenck*, 10 Pa. 81–285.

The present case is not a case of escrow, and if it were the rule in such cases has been modified to conform to the prevailing doctrine of estoppel, as has been indicated.

*Mr. Thomas H. Callan* and *Mr. Hugh T. Taggart* for the appellees:

1. The question of delivery. The following general propositions are established by all the authorities, viz: that delivery is indispensable to the validity of a deed, though all other requisites may have been complied with; and being matter *in pais*, that it is always competent to show by parol evidence that the deed, though in the hands of the grantee, has never been delivered; that in making it there must be an intent coupled with some act, on the part of the grantor, together with an acceptance on the part of the grantee. *Smith* v. *Bank*, 32 Vt. 353; 3 Wash. Real Prop. (5th ed.) 304, and cases cited; Tiedeman Real Prop. sec. 812 and cases cited; *Cook* v. *Brown*, 34 N. H. 474.

In the case of an escrow " the delivery to be valid must be with the assent of the grantor, and if the deed be delivered without authority, or is obtained from him (the depositary) without authority, or is obtained from him fraudulently, without performance of the condition, it is absolutely void, both as to him and purchasers from him." Martindale on Conv., sec. 226, and cases cited; *Wheelwright* v. *Wheelwright*, 2 Mass. 447; 3 Wash. Real Prop., 323; *Barlow* v. *Hinton*, 1 A. K. Marsh. (Ky). 71.

The foregoing citations sufficiently define and illustrate, perhaps, the doctrine of delivery and its essential requisites, and sustain the proposition among others, that when the deed, being either in the hands of the maker or held by another as an escrow, is stolen or otherwise falls surreptitiously into the hands of the grantee, there has been no delivery, the title still remains in the grantor, and no one can acquire title from the grantee. In addition to the authorities referred to the attention of the court is respectfully called to the decisions in the following cases, which are also in point; our position being that where they are cases of escrow, what is said in regard to the invalidity of a deed obtained from the depositary by the grantee by surreptitious

means applies *a fortiori* to a deed obtained as in the present instance, in the same objectionable manner from a mere caretaker, who was without authority from the grantor to deliver it in any event. *Chadwick* v. *Webber*, 14 Am. Dec. 225 ; *Hadlock* v. *Hadlock*, 22 Ill. 388 ; *Jordan* v. *Davis*, 108 Ill. 341 ; *Everts* v. *Agnes*, 4 Wis. 364 ; *Gould* v. *Wise*, 32 Pac. Rep. 577 ; *Van Ammage* v. *Morton*, 34 Am. Dec. 582 ; *Chipman* v. *Tucker*, 38 Wis. 43 ; *Ogden* v. *Ogden*, 4 Ohio St. 195 ; *Fisher* v. *Beckwith*, 30 Wis. 55 ; *Prutsman* v. *Baker*, 39 Wis. 646 ; *Gowes* v. *Vonderhyden*, 1 Paige, 385.

2. The question of estoppel. There having been no delivery of the deed it remains to be considered whether the acts of the appellee in the transaction with the loan and trust company exhibit negligence, in any degree, or to such degree as should in equity be held to make him responsible for the consequences of the negligence of the company and the rascality of the defendant, Williams. It is to be borne in mind that the trust company in so far as the appellee was concerned was neither a depositary holding an escrow which he had deposited with it, to be delivered conditionally, nor an agent of the appellee with any power or authority, general or special, conferred upon it to act for him in making a delivery or transfer of his deed to any third party. The company was a separate and distinct party with whom appellee had made a contract for the safe keeping and safeguarding of the envelope which was placed in the box as against the public at large and especially as against the defendant, Williams.

" Where the estoppel turns upon negligence, a consideration of the first importance arises, to-wit, whether the conduct of the party alleged to be estopped was the proximate cause of the change of position by the party claiming the existence of the estoppel." Bigelow on Estoppel, 655. If it was an act of negligence on the part of appellee to entrust his deed to the company for safe-keeping, which we deny, yet his act in the premises was not the proximate

cause of the act of appellant, Burton, in lending money upon the faith of the void deed. The proximate cause of the act of said appellant was the negligence of the company and the intentional misconduct of the defendant, Williams, which negligence and misconduct was not " either the natural or likely or necessary or direct consequence of the carelessness " of the appellee. *Brant* v. *Iron Co.*, 93 U. S. 336.

Several of the cases which have been cited on the question of delivery are also in point upon the question of estoppel. The fact that some of them are cases of escrow is immaterial; the position of one who deposits in escrow cannot be more meritorious than that of the appellee in the present case. *Chipman* v. *Tucker*, 38 Wis. 43 ; *Ewarts* v. *Agnes*, 6 Wis. 455 ; *Gould* v. *Wise*, 32 Pac. Rep. 576 ; *Smith* v. *Bank*, 32 Vt. 349 ; *Tisher* v. *Beckwith*, 30 Wis. 59 ; *Berry* v. *Anderson*, 22 Ind. 41 ; *Wait* v. *Pomeroy*, 20 Mich. 425.

It is conceded by counsel for the appellants that if Williams committed larceny in obtaining possession of the deed, then the doctrine of estoppel does not apply. The taking of the deed has all the elements of moral turpitude involved in larceny and seems to have all the " earmarks " of the technical offence, under a statute which makes it a crime to steal " goods and chattels or other *personal property*," and which also makes it a crime to steal a "receipt acknowledging the receipt of money," whatever may have been the rule at common law. See secs. 1158 and 1159 R. S. D. C.

The restriction, however, upon the application of the doctrine of estoppel is not confined to technical cases of larceny by the grantee in obtaining possession of the deed ; as shown by the authorities above cited it extends to all cases of flagrant moral wrong, whether punishable as crimes or not.

Mr. Justice MORRIS delivered the opinion of the Court:

The question in this case, as we understand it, is which of two innocent persons should be required to suffer the loss occasioned by the wrongful act of a third person, the one who, by his negligence or inadvertence, has placed it in the power of such third person to perpetrate the wrong which otherwise would not have been perpetrated, or the one who, without any negligence on his own part, has been misled by the wrongdoer into a situation into which otherwise he would not have entered. And in the light of modern equity, of the overwhelming mass of modern judicial decision, and of what seems to us to be the dictate of natural justice, that question, in our opinion, can admit of but one answer.

The argument on behalf of the complainant, it is true, proceeds upon an entirely different theory; and that is, that he never parted with the title to his property by the delivery of his deed, and that the deed, having been abstracted from him without his knowledge and consent, could constitute no basis of right in the appellants. But the answer to this is, that, if the complainant placed it in the power of Williams to obtain such control over the deed as he did obtain and to use it as he is shown to have used it, he, the complainant, is estopped from proving that there was no delivery of the deed.

Delivery of a deed is as necessary now as it ever was to the complete efficacy of the instrument; but much of the ancient law upon the subject, in consequence of changed conditions, has become obsolete. The actual possession of title deeds is no longer a matter of paramount importance; we rely more upon records than upon original documents for the security of our titles. Consequently delivery is very generally presumed, whenever it appears that there is *prima facie* evidence of execution. Possession of a document by a person who claims under it is *prima facie* evidence of the delivery of the instrument, and throws upon

the maker of it the burden of proof that it never was delivered. As between grantor and grantee, the question of delivery is one to be determined by a fair preponderance of evidence. But when rights of third persons have intervened, the proof of non-delivery should be clear beyond reasonable doubt; and in many cases the grantor will be absolutely estopped from denying the delivery. The doctrine of equitable estoppel in such cases has received great development and extensive application in recent years; and the result has been that we cannot any longer follow the theory of the law laid down in many of the older adjudications. Without denial of the rule that no deed of conveyance is complete until it is, not only executed, but actually, freely and voluntarily delivered, it is a paramount principle of equity that, when situations have been created by the action, inaction or negligence of parties, they should not be permitted to take advantage of them to the detriment of those innocent persons who have been, without negligence of their own, led to act upon such situations.

The present is no case of escrow; and if it were, we are not sure that we would feel bound by the older decisions on that subject. The practical operation of the arrangement between the parties here is that the deed in controversy was delivered by the grantor to the grantee, upon condition only that it should not become effective until the happening of a certain contingency; and that if the contingency did not happen, the deed should be void. It was placed in the power of the grantee by the deliberate action of the grantor to take possession of the deed, and to perpetrate the fraud which he perpetrated. The deed was placed in a box; the key of that box was delivered to the grantee, with right of access to it at any time; and in contemplation of law, that must be held to have been an absolute delivery. It is plainly of no consequence that the complainant also had a key to the box, and free access to the deed; for the question is not what the complainant might do, but what he placed in the power of the grantee to do.

Nor does it seem to us to be of any consequence whether
the loan and trust company was or was not made a guardian
of the good conduct of the parties and an overseer of their
behavior in their access to the box. Such guardianship
besides being extraordinary and unusual, and possibly be-
yond the right of the parties to impose upon the company
under the circumstances of this case, was no more at the
utmost than an agency for either party ; and it is not ap-
parent how its failure to perform that duty to the parties, if
it assumed to perform it, could be held to invalidate a deed
in the hands of third parties. The complainant, so far as
the rights of the appellants here are concerned, might just
as well have stationed a watchman at the door of the record
office to arrest any attempt on the part of the grantee to
enter that office in order to have that deed recorded. If
the grantee eludes the watchman, or even if the watchman
fraudulently colludes with the grantee to do that which he
has been employed to prevent, we fail to see what bearing
his default can have upon the rights of innocent parties who
knew nothing of their fraud.

The deed having thus been delivered to the grantee with
practically absolute power to do what he pleased with it,
the fact that he disregarded the condition under which it
was delivered, violated his trust, and made a fraudulent use
of the instrument, cannot be held to invalidate it in the
hands of third parties. This is the unanimous holding of
all the authorities on the subject, and it is consonant with
reason, and required by the safety of society. *Butler* v.
*United States*, 21 Wall. 272 ; *Dair* v. *United States*, 16
Wall. 1 ; *Putnam* v. *Sullivan*, 4 Mass. 45 ; *Pratt* v. *Holman*,
16 Vt. 530 ; *Blight* v. *Schenck*, 10 Pa. St. 285. The case,
as we have said, is not one of escrow, or of agency of any
kind ; but of a grantee who, receiving in confidence that he
would not use it except in a certain contingency, a deed of
conveyance to himself, does in fact use the deed before the
happening of the contingency and before he becomes en-
titled to use it as between himself and the grantor. We

fail to find any authority that holds innocent purchasers for value chargeable with the result of such secret conditions. So to charge them would undermine all the safeguards of society, and restore the worst evils against which the statute of frauds and numerous other statutes were intended to guard. Very appropriately was it said by the Supreme Court of the State of Pennsylvania in the case of *Blight* v. *Schenck, supra :*

" The first reflection which strikes us is, that, if a title may be avoided under such circumstances, no purchaser is safe. This is a strong case ; for here the defendant is an innocent purchaser for value. He invests his money on the faith of the solemn acts and declarations of the plaintiff. These acts and declarations were made before a magistrate duly empowered for that purpose, certified to by him in proper form, duly recorded on the records of the county. * * * Moreover, it appears at the time of the purchase the vendee was in the actual possession of the premises. There was nothing to put him (the purchaser) on his guard. It must require a very strong case, as the plaintiff in error justly contends, to permit a grantor to aver, against the confidence thus reposed in his acts and declarations, exactly the opposite of those acts and declarations ; to say, after acknowledging before the proper officer of the law that he delivered the deed, that he never delivered it ; and having acknowledged that he received the purchase money, that he never received it."

That there was a great fraud perpetrated upon the complainant, is of course quite evident. But he was the victim of his own misplaced confidence, for which it is not just that he should make others suffer, who are wholly innocent. He thought that he was securing himself, and took what might be regarded as remarkable precautions for the purpose ; and yet his arrangement was a most transparently flimsy and insecure one. Whether the arrangement was as the complainant testifies or as Mr. Hill testifies, whether the stamped portion of the agreement of September 15,

1892, was inserted in the presence of the parties and was assented to by them, or was an afterthought, is of no consequence. The legal right of the parties to have separate access to the box would have been the same without it as with it. The fact that each received a separate key corroborates that theory; and the very provision that neither party should, without the consent of the other, remove "Exhibit A" from the box, necessarily implies that each might have separate access to the safe. The complainant, therefore, plainly put it in the power of Williams to use the deed, if the latter chose to violate their private agreement, of which third parties could have no knowledge, which it seems he did choose to do; provided, also, if this was a superadded condition, that he could elude the vigilance of the loan and trust company, which also was successfully accomplished. It is clear to us, that, however well intended it may have been on the part of the complainant, this arrangement was legally an act of negligence of very grave character, and practically amounted to an invitation to Williams to do precisely what he did do.

Those who take risks should take the consequences of their risks, and should not seek to visit them upon innocent third parties. Escrows, secret conditions, secret trusts, private parol agreements in limitation of written contracts, have all elements of danger in them. As between the immediate parties, equity will not permit those to suffer who have honestly confided in others and whose confidence has been betrayed. But much less will it permit them to retrieve their loss at the expense of those who, relying upon their actions or representations, have become the innocent victims of the fraud which only those actions or representations enabled to be perpetrated.

We are aided in the view which we take of this case by the fact that the complainant has a practical remedy for the wrong which has been committed, while the appellants are wholly without effective remedy, if their deed should be declared void. Apart from the fact that, if his own conten-

tion be correct as to the alleged failure of the loan and trust company to perform its duty, the complainant has a right of action against that company for the default, it seems that the complainant's loss may yet be amply covered by the assignment made by Williams of his interest in the Van Camp claim.    It is a mitigating circumstance in the fraud perpetrated by Williams that, when he abstracted the deed of conveyance and other papers contained in the envelope marked ".Exhibit A," he did not carry off his assignment of the Van Camp claim.    That was left in the box, and is now in the possession of the complainant; and there seems to be no reason why it should not be availed of by him in due time.

For the reasons which we have stated, we find ourselves unable to concur in the view taken of this case by the learned justice who heard it in the court below.    It appears to us that there was error in that view.    We think the case is one in which the complainant should be held to be estopped from denying the validity of his deed to Williams so far as the same is required to support the subsequent deed of trust from Williams to secure the appellant, Burton, and that this deed of trust should be sustained as a valid lien upon the property.    Further than as it may be required as a support to the deed of trust, the deed from the complainant to Williams may, of course, be declared void.

It is our opinion, therefore, that *the decree of the court below should be reversed, with costs; and that the cause should be remanded to that court, with directions to enter a decree in conformity with this opinion.    And it is so ordered.*