RUSHING et al. v. CITIZENS' NAT. BANK OF PLAINVIEW.

(Court of Civil Appeals of Texas. Amarillo. Oct. 25, 1913.)

1. APPEAL AND ERROR (§ 482*)—SUPERSEDEAS BOND—APPELLATE COURT—JURISDICTION—HEARING.

Under Rev. Civ. St. 1911, art. 1593, providing that the Courts of Civil Appeals shall have power, on affidavit or otherwise, to ascertain such matters of fact as may be necessary to the proper exercise of their jurisdiction, such a court, on an application by sureties to quash a supersedeas bond on appeal, had power to hear proof dehors the record as to the validity of the bond.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2259–2263; Dec. Dig. § 482.*]

2. ALTERATION OF INSTRUMENTS (§ 11*)—SPOLIATION BY STRANGER—EFFECT—"ALTERATION"—"SPOLIATION."

Erasure of the name of a surety from a supersedeas bond, executed to perfect an appeal, by a stranger to the bond, was not an "alteration" which would invalidate the bond, but was a "spoliation" which would not affect its legality.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 57–76; Dec. Dig. § 11.*

For other definitions, see Words and Phrases, vol. 1, pp. 360–365; vol. 7, pp. 6615, 6616.]

3. APPEAL AND ERROR (§ 469*)—SUPERSEDEAS BOND—EXECUTION—CONDITIONS—FAILURE TO PERFORM—ESTOPPEL.

Where certain sureties on a supersedeas bond, executed to perfect an appeal, signed the same on condition that the appellant secure other signers, but, after signing, delivered the bond to the appellant without notifying the clerk not to accept the bond without such additional signatures, and the bond having been filed without such signatures, the signers on such condition were estopped to deny the validity of the bond because it had not been complied with.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2231, 2232; Dec. Dig. § 469.*]

Appeal from District Court, Hale County; L. S. Kinder, Judge.

Action by the Citizens' National Bank of Plainview against J. J. Rushing and others. Judgment for plaintiff, and defendants appeal. Separate motions by J. O. Harrall and J. L. Overall to quash the supersedeas bond, in which the bank intervened. Denied.

Madden, Trulove & Kimbrough, of Amarillo, and Graham & Graham and Fred C. Pearce, all of Plainview, for appellants. Dalton & Russell and Mathess & Williams, all of Plainview, W. D. Benson, of Lubbock, and Turner & Wharton, of Amarillo, for appellees.

HUFF, C. J. This is an appeal from the district court of Hale county, Tex. The judgment rendered in that court was for an amount of about $14,000, also foreclosing a lien on certain land. The appellants executed a supersedeas bond, in the sum of $32,000. The name of two sureties, J. O.

Harrall and J. L. Overall, appear to be signed to the bond. There is one other surety thereon, T. J. Flake. The record was filed in this court June 10, 1913, and on September 23d J. O. Harrall and J. L. Overall each filed separate motions, designated "Motion to Quash Supersedeas Bond." On the 6th day of ·October the appellee bank filed what is designated "Intervention of Citizens' National Bank." The two interventions are in the same language except as to the name of the surety presented in the motion to quash, and it is·as follows: "Now comes the Citizens' National Bank of Plainview, and joins in the motion made herein by J. L. Overall to quash the appellants' bond filed in this cause, and prays said motion be granted." The appellants attack both motions because the sureties ʹhave no standing in this court to make a motion to quash the appeal bond; that he is not a party to the suit, and that the issues cannot be tried in this court; that the question of the sureties' liability is not a jurisdictional matter, but that it is merely an irregularity which may be waived; that the record was filed more than 30 days before the filing of the motion; and that rule 8 for Courts of Civil Appeals (142 S. W. xi) applies. The appellants also object to the consideration of the intervention on the ground that its right to make said motion had been waived under rule 8.

As grounds to quash the motion, Harrall set up: First. That the name J. O. Harrall is nót the signature of this affiant, but was written by some one to him unknown and without his authority. That, upon the representations hereinafter set out, this affiant signed said bond; but that his signature has been erased and affixed by some one to him unknown, and without his knowledge or consent. Second. That he signed said bond at the solicitation of Fred C. Pearce, attorney for J. J. Rushing et al., defendants in said cause, and that said Pearce represented and stated to this affiant that the bond was only for $500. That the clerk of the district court of Hale county had fixed the probable amount of the costs in said cause at $500, and that the costs would not exceed that amount, and that the bond presented to him was only to cover the costs in the case. They would get four or five other men to sign the bond, and even if appellants lost and the sureties had to pay the bond, which they would not have to do, "none of them could get hurt, as it was such a small amount." That John Reed of Hale Center, was going to sign the bond, and that they would get other good and solvent men to sign with them. That affiant never read the bond and relied absolutely upon the statements of the said Pearce, and that said Pearce showed him where the said bond stated the amount was $500. That he would never have signed said bond if he had known it exceeded $500 or that it was other than a bond for the costs, and would never

have signed it except for the statement that they would get four or five other good men to sign it and would not have signed it but for the statement that John Reed would sign it as surety. That there are only two other sureties on the bond, and affiant is informed that one of them, Overall, was induced to sign it upon practically the same representation as was this affiant, and that said Overall claims he is not bound and will file a motion to quash the bond and will be released. That said bond is in the sum of $32,000 and binds the parties to pay off and discharge the full amount of the judgment which may be rendered in said cause, "all of which was unknown to this affiant at the time he signed the bond, and he would never have signed it if he had known the true facts in regard to it." This motion, or plea, was signed and· sworn to by J. O. Harrall, and the only affidavits supporting the statements therein are the affidavits of seven other parties who make affidavit that Harrall's reputation for truth and veracity is good in the neighborhood where he resides.

Fred C. Pearce, by affidavit, denies every statement made by J. O. Harrall and states that he told him it was a supersedeas bond and that Harrall read over the bond fully; and J. E. Rushing also filed a supporting affidavit of Pearce, denying the statements made by Harrall; and J. J. Rushing, also by affidavit, stated that after the bond was signed he had a conversation with J. O. Harrall, that Harrall told him that Pearce read the bond over to him and asked him if the bond did not state that it was for $32,-000, and he said it did, and that Pearce told him that it was for an amount double the judgment, and that he told him the actual costs of the case would only be about $500, and in other particulars controverted Harrall's statements. Harrall's affidavit denies the statement of Pearce and J. E. Rushing.

J. L. Overall, in his motion, duly sworn to, sets up, as a ground for quashing the bond, the erasure of Harrall's signature from the bond and the resigning of it by some one else for Harrall, and further sets up: That it was executed upon the conditions hereinafter set out. That one of the appellants in this case came to the plaintiff at a point on the road from Plainview, Hale county, Tex., to this petitioner's home north of Plainview, about 18 miles, and represented to this petitioner that said bond was a bond for the costs and that said bond was for costs for the sum of $500; that the day on which said conversation took place was the last day on which appellants had to file their appeal bond in this cause, and that if they did not make and file their bond on said day that the cause would go by default; that if this petitioner would sign said bond, he, the said J. E. Rushing, would have two other good and solvent sureties·to sign the said bond, making five sureties in all on said bond; that said other two

sureties so to be gotten on said bond should be men vouched for by L. G. Wilson, who is a man well known to this petitioner, and further represented to this petitioner that he, the said J. E. Rushing, would not file said bond until such two other sureties signed the same. This petitioner at once said he would not sign said bond until he (petitioner) could come to town, Plainview, and see his attorney and counselor, but thereupon said J. E. Rushing further represented to this petitioner and told this petitioner that the two other parties he was to get on said bond as sureties and which Rushing said L. G. Wilson had agreed to get to sign the bond if this petitioner would sign it, living southeast of Plainview, Tex., as that was the last day, as it was necessary for said Rushing to go to see these two other parties and get back to Plainview and file the bond that night, he would not have time to wait for this petitioner to go to town to investigate the matter. It would be impossible to wait for said Rushing to see the other parties and get them to sign the bond, and unless this petitioner would sign the bond then and at once the appellants would lose their appeal. That the said Rushing was in such a hurry or appeared and pretended to be in such a hurry that this petitioner was not given and did not have time, or opportunity, to read the said bond and did not know the contents thereof, and your petitioner shows further that some time after the above-mentioned conversation was had he met said Rushing in Plainview and asked said Rushing if he was successful in getting the other sureties on said bond, and said Rushing then told this petitioner that the said Rushing had gotten the other two sureties to sign said bond and had filed and had same approved, and that everything was all right. That this petitioner never found out or knew the amount of said bond, nor never found out or knew that no other person had signed said bond, as said Rushing had promised should sign the same, until the 6th day of August, 1913. Your petitioner further shows that said Rushing never procured any other person to sign said bond as sureties; that there have never but three persons signed same as sureties; that said bond is for the sum of $32,000 and binds the bondsmen to pay off the judgment which may be rendered in this cause. Your petitioner further says: That he would not under any circumstances and under any condition whatever sign said bond had he known that it was for so large an amount, or had he known that it was other than a bond for costs, and that he would not have signed said bond at all but for the understanding and agreement that two other good sureties vouched for by said L. G. Wilson should also sign said bond as sureties, with this petitioner, and that said bond was signed by your petitioner upon the express understanding and condition that it should be so signed by two other sureties, making five sureties in all, and upon the belief and understanding that it was a cost bond only for the sum of $500. That your petitioner relied wholly on the representations and promises so made by said J. E. Rushing, and would not have signed said bond but for said representations, but upon the conditions as aforesaid, that the other two sureties sign the same before it was filed or used.

Overall filed affidavits of T. E. Caldwell and wife, corroborating the statement with reference to the amount of the bond and getting additional sureties. He also filed affidavit of his daughter, Gertrude, to the same effect.

J. E. Rushing makes a controverting affidavit of Overall's statement, denying every material statement of Overall, stating that he had read the bond over to Overall in full and Overall said he would sign the bond if Judge Kimbrough would represent them on the appeal, and he assured him that he would do so, and there was no promise to get additional sureties on the bond.

J. J. Rushing filed a controverting affidavit stating that some time in September, after he learned that Overall was making some complaints about the bond, he asked him about it, and that Overall stated he read the bond; that Overall told him that he told J. E. Rushing at the time that if he was going to retain Judge Kimbrough that he would sign the bond. The affidavit is in effect a denial of the material statements made by Overall in his statement.

[1] Article 1593, R. S. 1911, provides: "Said courts (Courts of Civil Appeals) shall have power upon affidavit or otherwise as by the court may be thought proper, to ascertain such matters of fact as may be necessary to the proper exercise of their jurisdiction." Mr. Justice Gaines, after quoting Constitution, art. 5, § 3, which is substantially the same as the statute, said: "But we do not understand that this provision of the Constitution applies to questions which were put in issue, or which could have been put in issue, in the trial court, but only to such as may arise after a final disposition of the case in the court from which the appeal is taken. It has been practically so decided. Chrisman v. Graham, 51 Tex. 454, and cases cited. Every court must, in the first instance, determine its own jurisdiction; and when a question affecting its jurisdiction has arisen in a court of appeals, after the final decision of the matters in controversy in the court a quo, the appellate court must, of necessity, hear evidence dehors the record in order to determine it." City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960. As we understand the authorities and statutes in this state, when a supersedeas bond is filed and approved by the clerk of the trial court within the time prescribed by law, the appeal is perfected, and the Court of Civil Appeals had jurisdiction. Articles 2101, 2099, R. S.

1911; Cruger v. McCracken, 87 Tex. 584, 30 S. W. 537; Dillard v. Wilson, 137 S. W. 152; Rowlett v. Williamson, 18 Tex. Civ. App. 28, 44 S. W. 624. If the sureties on the supersedeas bond are not liable under the law and facts and no such bond executed as required, which will give this court jurisdiction or give it a right to render judgment thereon, then, as we understand, we can hear evidence dehors the record. In Cruger v. McCracken, supra, it is said: "It is a question of jurisdiction, and the court had the power to hear affidavits or other evidence in support of the motion and determine the issue." Therefore we conclude we have the authority, when jurisdiction is acquired over the sureties on an appeal bond, to hear evidence on the question of their liability thereon; at least, the trend of the authorities of this state are in that direction.

The sureties present their application to be relieved from the bond, and, while they term it a motion to quash, we presume it should be treated as a petition in equity to relieve them from liability thereon, on account of fraud and misrepresentation in procuring their signatures. They attempt to sustain their position by affidavits, which affidavits are controverted, in every fact stated, by counter affidavits made by the appellants. In order for this court to settle the issues of fact, we must resolve ourselves into a trial court. From these affidavits it is impossible for this court to determine who are falsifying. Of a certainty, some one does not tell the truth. Under such condition, this court is unable to find the truth of the matter. In order to reach anything like a satisfactory conclusion, if one can in fact be reached, we would be compelled as a trial court, under all the tests prescribed for ascertaining the truth, to hear the evidence. The petitions filed herein by the sureties, however, can be tested, and we believe should be by the rules of law and equity applicable to an equitable proceeding for relief, on account of fraud or misrepresentation.

[2] It will be seen that Harrall, by his first ground, alleges that his signature is not on the bond. He admits, however, having signed the same, but says that his signature was erased and afterwards affixed thereto by some one unknown to him and without his knowledge or consent. All other parties deny knowing anything of the erasure. The bond in the transcript in this case bears no evidence on its face of an erasure. The facts are uncontroverted that he signed the bond originally and turned it over to appellants, who filed it with the clerk. The original bond is not before us. The evidence before us leads to no other conclusion than that a stranger to the bond made the erasure, if any was made. In such a case the erasure would not be an "alteration" in the meaning of that term, but a spoliation and, in legal contemplation, wholly immaterial and ineffective to give the bond any other or different meaning or operation than that which attached to it before such erasure. 2 Cyc. 151c; Tutt v. Thornton, 57 Tex. 35; Andrews v. Calloway, 50 Ark. 358, 7 S. W. 449; Union National Bank v. Roberts, 45 Wis. 373; Dinsmore v. Duncan, 57 N. Y. 573, 15 Am. Rep. 534; Skelton v. Tillman, 20 S. W. 71. We think the petition should allege that the erasure was made by some one connected with the bond. This it does not do, but, on the contrary, the affidavits indicated it was made by a stranger to the bond.

The next ground relied upon by both sureties is that it was represented to be for the sum of $500, and only for the costs, and that they did not know that it was for the sum of $32,000, and that it was a supersedeas bond. The allegations in either of the petitions are sufficient to relieve them, as we view the case, from their obligation as made. They do not show they were by any subterfuge prevented from reading the bond or that they could not read. No such fraudulent representation is alleged or shown, upon which they relied, as would excuse them from ascertaining the contents of the obligation they were signing. The bond is clearly written for the sum of $32,000. There was no fiduciary relation established between the parties alleged, nor was there any especial confidence pleaded as existing between the parties, which would excuse them from ascertaining the kind of instrument they signed.

By both petitions it is stated that the appellants were to secure other sureties on the bond before filing it, and that they would not sign it without the promise to procure other solvent sureties thereon. The bond was delivered to one of the appellants who had signed the same as a principal obligor. There is no allegation that the appellee, the obligee in the bond, had notice of the condition upon which it was delivered to the appellants and no allegation that the clerk, whose duty it was to approve and file the bond, had notice of such condition. It has been held in this state, as well as in others, that when a bond is signed and left with the principal, who delivers it to the obligee therein, and who accepts and approves it, without notice of the conditions upon which it was signed, the sureties will be estopped from setting up such conditions. Ballow v. Wichita County, 74 Tex. 339, 12 S. W. 48; McFarland v. Howell, 16 Tex. Civ. App. 246, 43 S. W. 315; Dair v. U. S., 16 Wall. 1, 21 L. Ed. 491.

[3] We see no reason why the principles of estoppel should not apply. Every reason of justice and good faith requires its application to covenants of this kind. The bond was in all respects regular and according to the prescribed form and accepted by the officer, whose duty it was to take it as a completed contract. There was nothing on the face of the bond to put the officer upon inquiry, or that there were conditions annexed to it, or that it was not in the amount agreed upon.

Cutler v. Roberts, 7 Neb. 4, 29 Am. Rep. 371. The Colorado Court of Appeals held that a general demurrer was properly sustained to an answer denying liability on an appeal bond. The grounds alleged were that the principal therein induced the sureties to sign by representation that before the filing they would secure other sureties on the bond and that they notified the clerk to that effect before the bond was actually filed. The facts in that case are much stronger than here. Irwin v. Crook, 11 Colo. App. 172, 52 Pac. 683; Id., 17 Colo. 16, 28 Pac. 549.

The case of Wilson v. King, 59 Ark. 32, 26 S. W. 18, 23 L. R. A. 802, was a case in which John Farmer executed a bond to stay proceedings on the decree appealed from in a certain case. The defendant in the cause answered that at the time he signed the bond it was agreed with Mrs. Pillow that certain notes should be delivered to him for indemnity before the bond was filed. The Arkansas Supreme Court held that the defense was untenable; there being no evidence that the clerk of the court had notice before the bond was filed of the condition upon which it was to take effect. In the case of Nash v. Fugate, 65 Va. (24 Grat.) 18 Am. Rep. 640, the doctrine of estoppel was applied upon the bond, and in the course of the opinion quoted Judge Redfield's article in the Law Register, 1864, as follows: "Where the surety intrusts the bond to the principal obligor, in perfect form, with his own name attached as surety, and nothing upon the face of the paper to indicate that others are expected to sign the instrument in order to give it full validity against all the parties, he makes such principal his agent to deliver the same to the obligee, because such is the natural and ordinary course of conducting such transactions; and if the principal, under such circumstances, gives any assurance to the surety in regard to procuring other cosureties or performing any other condition before he delivers the bond, and which he fails to perform, the surety giving confidence to such assurances must stand the hazard of their performance, and he cannot implicate the obligee in any responsibility in the matter, unless he is guilty of fraud or rashness in accepting the security."

The Mississippi Supreme Court said: "It may be, as stated by the bondsmen, that they were misled by appellant into signing the bond, and that one of them notified the clerk, before the bond was filed, not to approve the same; but these matters cannot be adjudicated on this motion, or, for that matter, by the court on original proceeding here." Douglas v. Parsons, 101 Miss. 620, 57 South. 624. We think it may be said that the courts generally look with disfavor upon such proceedings; but, under our statute, we perhaps are given the authority upon original hearing to go into an investigation of the questions here presented; but it occurs to us when a surety signs the bond for a specific amount and delivers it to his principal upon certain conditions, who he must know can and will file it with the clerk and thereby secure a stay of execution and entail labor and costs in the preparation of records, and the like, and who fails to notify the clerk of the conditions of the bond or the amount for which he signs, should be estopped from denying his liability on the bond after it reaches the appellate court. We do not feel disposed to encourage such practice and think that if sureties desire to protect themselves they should, under the authorities cited, at least have notified the obligee or the officers of the condition and request that it be not filed until the conditions are complied with. However, we do not lay down this as a rule, but hold under the pleadings the sureties present no grounds for relief in this case.

Both motions of the sureties will be overruled and the prayer of the intervener denied.